In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1133

DAVID JOHNSON

*Plaintiff-Appellant,*

*v.*

DAVID D. ORR, MARIA PAPPAS,
Treasurer, FREDDA BERMAN, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 5900—**Wayne R. Andersen**, *Judge.*

ARGUED OCTOBER 16, 2008—DECIDED DECEMBER 4, 2008

Before RIPPLE, EVANS and TINDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* David Johnson acquired a "certificate of purchase" on a parcel of land in Cook County, Illinois (the "County") for which taxes had not been paid. Ordinarily the holder of a certificate of purchase can acquire a tax deed from the County if the owner of the property does not pay the delinquent taxes, but, in this

instance, it turned out that the County had been mistaken about the delinquency. With Mr. Johnson's explicit consent, a state circuit court judge entered an order directing that the tax sale be rescinded, Mr. Johnson's money be returned and the certificate of purchase be cancelled. Mr. Johnson nevertheless petitioned the state court to compel the County to issue him a tax deed, and when that request was denied, he filed this action claiming that the county clerk and other county officials had violated his civil rights under 42 U.S.C. § 1983, the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1703, and Illinois state law. The district court concluded that it lacked subject matter jurisdiction under both the *Rooker-Feldman* doctrine and the Tax Injunction Act. Because we agree that the district court lacked subject matter jurisdiction over Mr. Johnson's claims under the *Rooker-Feldman* doctrine, we affirm its judgment.

# I

## BACKGROUND

In 2004, Cook County concluded that the property taxes for a particular parcel of real estate had not been paid. Under Illinois law, when an owner fails to pay taxes on real estate, the county collector and the county clerk bring an *in rem* action in state court and request permission to sell the accrued taxes, special assessments, interest and penalties. *See* 35 ILCS 200/21-150; *Wilder v. Finnegan*, 642 N.E.2d 496, 499 (Ill. App. Ct. 1994). In May 2004, the County sold the delinquent taxes to Z Financial, LLC, and issued Z Financial a certificate of purchase. *See* 35 ILCS 200/21-250.

Z Financial later sold the certificate of purchase to Mr. Johnson. Illinois law thus entitled Mr. Johnson, as the tax purchaser, to receive a tax deed for the property if he sent and published the required notices informing the delinquent taxpayer of the right to redeem the property by repaying the delinquencies, *see* 35 ILCS 200/21-345, 200/21-350, 200/22-5, 200/22-10, 200/22-15, 200/22-20, 200/22-25, and then successfully petitioned the state circuit court, within three to six months of the end of the redemption period, for an order directing the county clerk to issue the deed. *See* 35 ILCS 200/22-30, 200/22-40; Cook County Circuit Ct. R. 10.3.

Mr. Johnson complied with the notice provisions. Before he petitioned the circuit court for a tax deed, however, the County sought a judicial declaration that the tax sale was "in error" because the parcel was owned by a government entity and therefore was exempt from property taxes. *See* 35 ILCS 200/21-310(a). On September 6, 2006, Mr. Johnson and the County entered into an "agreed order" declaring that the tax sale was in error and directing that the certificate of sale be surrendered within ten days, that the certificate be cancelled and that the county treasurer refund the purchase price plus costs and interest. The Illinois circuit court entered the order. Mr. Johnson does not allege that the County failed to return the money and cancel the certificate of purchase.

Despite the entry of the agreed order, Mr. Johnson petitioned the Illinois circuit court to order the county clerk to issue him the tax deed for the property. Apparently his first application did not follow the proper form, and the

circuit court granted him leave to file an amended application, which he did in November 2006. The record contains no further information regarding the outcome of Mr. Johnson's application, although the complaint in this case states that no deed was issued to Mr. Johnson.

One year later, in October 2007, Mr. Johnson filed this action. He claims that, by refusing to issue him a tax deed, the County violated his constitutional rights to due process, equal protection and freedom from illegal searches and seizures; that the County defrauded him in violation of the Interstate Land Sales Full Disclosure Act; and that the County's actions ran afoul of state statutes and Illinois common law. In his complaint, Mr. Johnson does not even acknowledge the existence of the agreed order. The defendants moved to dismiss the complaint for lack of subject matter jurisdiction. In granting the motion, the district court concluded that Mr. Johnson was asking, in effect, that the district court review and overturn the agreed order entered in state court, a remedy that the *Rooker-Feldman* doctrine prohibits. The district court also concluded that the Tax Injunction Act barred the exercise of federal jurisdiction because giving Mr. Johnson the relief he requests would interfere with Illinois' tax collection practices.

## II

## DISCUSSION

We review de novo a district court's determination that it lacks subject matter jurisdiction over a dispute. *Vill. of*

*DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 782 (7th Cir. 2008). Where a party raises the issue of subject matter jurisdiction, a court need not simply rely on the facts alleged in the complaint, but also may consider extrinsic evidence to determine whether it can exercise jurisdiction. *See Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002).

### A.

The district court reasoned that, under the *Rooker-Feldman* doctrine, it lacked subject matter jurisdiction over Mr. Johnson's claims. The *Rooker-Feldman* doctrine states that federal courts, other than the Supreme Court, do not have jurisdiction to review decisions of state courts in civil cases. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005); *Hemmer v. Ind. State Bd. of Animal Health*, 532 F.3d 610, 613 (7th Cir. 2008); *Holt v. Lake County Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005). The doctrine deprives federal courts of subject matter jurisdiction where a party, dissatisfied with a result in state court, sues in federal court seeking to set aside the state-court judgment and requesting a remedy for an injury caused by that judgment. *See Exxon Mobil Corp.*, 544 U.S. at 284; *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007). If the injury the plaintiff complains of resulted from, or is inextricably intertwined with, a state-court judgment, then lower federal courts cannot hear the claim. *Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 532-33 (7th Cir. 2004). *Rooker-Feldman* is inapplicable, however, when the alleged injury is distinct from the judgment. For

instance, it is inapplicable when the federal claim alleges "a prior injury that a state court failed to remedy." *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 702 (7th Cir. 1998); *see also Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999).

Mr. Johnson alleges that he has been injured by the court's failure to issue him a tax deed. This alleged injury stems directly from the Illinois circuit court's entry of the agreed order; it is that very order that deprived Mr. Johnson of the right to receive the tax deed and relieved the defendants of any obligation to deed the property to him. In essence, Mr. Johnson is complaining because the defendants are following the circuit court's order. *See Ritter v. Ross,* 992 F.2d 750, 754-55 (7th Cir. 1993) (holding that *Rooker-Feldman* bars subject matter jurisdiction where "but for" the state-court judgment the plaintiff would have no claim); *see also Holt*, 408 F.3d at 336.

It is of no consequence that Mr. Johnson's complaint does not challenge specifically the agreed order. Nor is it relevant that he has characterized his grievance as a civil rights claim. To determine whether *Rooker-Feldman* bars a claim, we look beyond the four corners of the complaint to discern the *actual injury* claimed by the plaintiff. *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 997 (7th Cir. 2000) (looking to the substance of the plaintiff's claim to determine whether *Rooker-Feldman* applies). "[A] litigant may not attempt to circumvent the effect of *Rooker-Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action." *Holt*, 408 F.3d at 336 (internal quotation marks and citation omitted).

Mr. Johnson's injury—the County's refusal to issue him a tax deed—was caused by the agreed order. He cannot avoid the *Rooker-Feldman* bar by alleging that he suffered this injury as a result of violations of his constitutional rights. Therefore, we agree with the district court that it lacked subject matter jurisdiction over Mr. Johnson's civil rights claims.

Mr. Johnson claims that the *Rooker-Feldman* doctrine does not apply because he has not "lost any 'decision'" and has not been "injured by a state court judgment." Appellant's Br. 33. We cannot accept these arguments. Mr. Johnson ignores that he consented to the agreed order's terms, characterizes it as an order that "[d]efendants have drafted" and describes it as "void." *Id.* In his brief, however, Mr. Johnson does not dispute that the order was a final decision of the state circuit court. At oral argument his attorney submitted that the agreed order was not final. We disagree. A settlement approved by a state court is a judgment for purposes of *Rooker-Feldman*. *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 556 (7th Cir. 2004) (quoting *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 528 n.5 (7th Cir. 2000)). In Illinois, an agreed order constitutes a settlement. *See Buntrock v. Terra*, 810 N.E.2d 991, 999 (Ill. App. Ct. 2004) (observing that "an order entered by consent" is equivalent to a settlement agreement recorded by the court). That Mr. Johnson later filed a petition for a tax deed—a right he explicitly relinquished when he consented to the agreed order—does not change the essential nature of the current action: it is an effort to overturn the decision of the state court.

Mr. Johnson's complaint and his appellate brief make crystal clear that he is claiming that he has been injured by the agreed order. The thrust of his argument is that the state court's judgment was in error. He alleges in his complaint that the property is not tax exempt, that defendants "purposely or recklessly ignored publicly available information that the land is not exempt from taxation in the state of Illinois," and that the land is "not exempt from taxation under Article IX, Section 6 of the Constitution of Illinois." R.1 at 2, 7. In his opening appellate brief, he submits that he "has purchased delinquent land not exempt from taxation," that "the delinquent land was not sold through inadverten[ce] or mistake," and that the agreed order "falsely stated that the delinquent land was exempt from taxation." Appellant's Br. 6, 18, 28. The way to remedy these alleged wrongs is not through an action in the district court. If Mr. Johnson believes the state court was wrong about the tax-exempt status of the property or that he was induced fraudulently to sign away his rights to receive the tax deed, his remedy is to ask the state circuit court to set aside the agreed order. An Illinois court can set aside a consent order on the basis of newly discovered evidence or on a showing that the agreement was the result of a fraudulent misrepresentation. *See In re Marriage of Nienhouse*, 821 N.E.2d 1228, 1234 (Ill. App. Ct. 2004); *Burchett v. Goncher*, 603 N.E.2d 1, 4 (Ill. App. Ct. 1991). Mr. Johnson's relief lies in the Illinois courts, and he cannot avoid *Rooker-Feldman* simply by bypassing state court. *See Beth-El All Nations Church*, 486 F.3d at 294; *Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001).

Mr. Johnson also protests that the agreed order is irrelevant because the certificate of purchase was a final judgment guaranteeing him the right to receive a tax deed and therefore could not be voided by the agreed order. We cannot accept this argument. It is well established under Illinois law that a tax purchaser is not automatically entitled to receive a tax deed. For instance, if the tax purchaser does not comply with the requirement that he give notice of the deficiency to the owner of the property, he will not be granted a tax deed. *See* 35 ILCS 200/22-5, 200/22-40(a). Similarly, an order declaring that the tax sale was in error voids the certificate of purchase and revokes the tax purchaser's right to receive a tax deed. *See* 35 ILCS 200/21-310; *see also RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 451 (7th Cir. 1999). Thus, Mr. Johnson's certificate of purchase was not a final judgment because it was revocable and did not automatically entitle him to a tax deed. *See RTC Commercial Assets Trust 1995-NP3-1*, 169 F.3d at 455.

Mr. Johnson also contends that the *Rooker-Feldman* doctrine does not apply because his complaint alleges that the defendants acted under the color of state law. In support of this argument, Mr. Johnson relies heavily on *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), but he misreads that case. The plaintiff in *Nesses* lost a series of lawsuits in state court and then brought a civil rights action in federal court against the lawyers and judges involved in the state litigation, alleging that they had conspired to ensure that he lost his lawsuits. We determined that *Rooker-Feldman* was not a barrier to Nesses' claims because he was not "merely claiming that the

decision of the state court was incorrect." *Id*. at 1005. Instead, he claimed that the defendants had violated an independent right: "the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics." *Id*. This decision does not help Mr. Johnson; he does not claim that the defendants violated some independent right. All of his constitutional claims stem from the revocation of his right to receive a tax deed, as set forth in the agreed order. And as we noted earlier, a plaintiff cannot get around *Rooker-Feldman* simply by couching his grievance as a constitutional claim. *See Long*, 182 F.3d at 557; *Holt*, 408 F.3d at 336.

## B.

In addition to his civil rights claims, Mr. Johnson's complaint also alleges a violation of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-1720. We do not have subject matter jurisdiction to entertain this claim. A district court has federal question jurisdiction only if the complaint shows, on its face, that a federal claim is "sufficiently substantial." *See Greater Chicago Combine & Ctr., Inc. v. City of Chicago*, 431 F.3d 1065, 1069 (7th Cir. 2005) (quoting *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1256 (7th Cir. 1994)). Thus, if a claim that purportedly arises under a federal statute is "wholly insubstantial and frivolous," then the court must dismiss that claim for lack of subject matter jurisdiction. *Greater Chicago Combine & Ctr.*, 431 F.3d at 1069 (quoting *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1182 (7th Cir. 1989)).

Mr. Johnson's claim under the Interstate Land Sales Full Disclosure Act is insubstantial and frivolous. The Act prohibits property owners from engaging in fraud in the sale or lease of certain types of real estate. As relevant here, the prohibitions in the Act apply only to a "sale or lease, or offer to sell or lease any lot" that is not subject to an exemption. *See* 15 U.S.C. § 1703(a)(2). The defendants did not sell any property to Mr. Johnson. The County does not acquire ownership of property, and thus cannot sell it, simply because taxes go unpaid. Mr. Johnson was assigned a "certificate of purchase" by Z Financial, which had paid the delinquent taxes on the property. Thus, the County essentially sold the right to collect the back taxes from the property owner, who was entitled to reimburse Mr. Johnson for the delinquent taxes and retain ownership. *See* 35 ILCS 200/21-345. If the property owner failed to pay, Mr. Johnson then had to petition the circuit court and provide proof that he had given the taxpayer the required notice before he could receive a deed. *See* 35 ILCS 200/22-30, 200/22-40; Cook County Circuit Ct. R. 10.3. The County did not sell the property to Mr. Johnson, and Mr. Johnson never owned it. *See Beth-El All Nations Church*, 486 F.3d at 288 (noting that the holder of a certificate of purchase did not own the property).

Even if a tax sale were a "sale" of property for purposes of the Act, Mr. Johnson's claim would be meritless for another reason. The Act specifically exempts from its reach "the sale or lease of real estate by any government or government agency." 15 U.S.C. § 1702(a)(5). Cook County, through the county collector and the county clerk, administered the tax sale and issued the certificate of purchase. The

County, a government entity, is exempt from liability for land sales under the Act.

## C.

The district court correctly concluded that it lacked subject matter jurisdiction to decide Mr. Johnson's claims. We briefly address, however, the district court's ruling that the Tax Injunction Act ("TIA") provides an additional basis for finding a lack of jurisdiction. The TIA deprives district courts of jurisdiction when a party seeks to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Essentially, it blocks taxpayers from suing in federal court to tie up a state's "rightful tax revenue" or to avoid paying state taxes, both of which would reduce the flow of tax revenue. *Levy v. Pappas*, 510 F.3d 755, 760-62 (7th Cir. 2007)*; see also Hibbs v. Winn*, 542 U.S. 88, 107 (2004). Although the TIA applies only to suits seeking injunctive relief, suits for damages that seek to reduce state tax revenue are barred "by the free-standing principle of comity." *Wright v. Pappas*, 256 F.3d 635, 637 (7th Cir. 2001) (citations omitted).

Mr. Johnson does not seek to tie up the County's tax revenue or to avoid paying taxes. The taxes originally, but erroneously, assessed on the property were paid at the tax sale. The ultimate relief Mr. Johnson seeks—a tax deed—would not deprive the County of tax revenue. *Cf. Levy*, 510 F.3d at 762 (holding that the TIA barred suit alleging loss of and delay in receiving tax refunds because

relief sought would operate to reduce the flow of tax revenue to the state); *Wright*, 256 F.3d at 637 (holding that the TIA barred suit where tax purchaser sought to undo tax sale because purchaser was, in effect, seeking a refund of taxes). To the contrary, it appears that Mr. Johnson would be quite content to allow the County to keep the taxes he paid on the property (or more precisely, that Z Financial paid, but that Mr. Johnson presumably reimbursed to Z Financial when he bought the certificate of purchase) and to put the property back on the tax rolls, provided that the County issue him a tax deed. It is the defendants, not Mr. Johnson, who argue that the County is not entitled to the revenue because the property is tax exempt. If Mr. Johnson were to receive his requested relief, the Illinois coffers would be increased, not decreased. *See Hibbs*, 542 U.S. at 94 (holding TIA inapplicable to suit challenging the constitutionality of state tax credits where the relief sought would increase, not decrease, state's revenue); *Dunn v. Carey*, 808 F.2d 555, 558 (7th Cir. 1986) (observing that the TIA does not bar suits "that might increase state taxes"). Finally, in a similar vein, the defendants argue that the relief Mr. Johnson seeks would "restrain the tax sale process" and thus reduce the flow of tax revenue. Mr. Johnson does not seek an injunction to suspend or otherwise impede tax sales. He merely insists that the state court failed to issue him a tax deed.

Because Mr. Johnson has not asked the court for relief that would impede the collection of taxes or reduce the flow of tax revenue to Illinois, the TIA does not bar his claims. *See Hibbs*, 542 U.S. at 105 (rejecting the proposition that the TIA strips federal courts of jurisdiction over "all

aspects of state tax administration"). However, because we conclude for other reasons that subject matter jurisdiction is lacking, the judgment of the district court is affirmed.

AFFIRMED