┌─────────────────────────────────────────────┐
│ **NONPRECEDENTIAL DISPOSITION**              │
│ To be cited only in accordance with Fed. R. App. P. 32.1 │
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 18, 2020
Decided July 21, 2020

**Before**

DIANE P. WOOD, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-2738

| | |
|---|---|
| BARBARA ANDERSEN, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
|    *v*. | |
| | No. 1:17-cv-5761 |
| VILLAGE OF GLENVIEW, *et al.*, | |
|     *Defendants-Appellees*. | John J. Tharp, Jr., |
| | *Judge*. |

**O R D E R**

This case is one stop in a long and lamentable ordeal stemming from the acrimonious divorce of Barbara Andersen and her former husband. Andersen brought this lawsuit after her ex-husband's complaints of harassment resulted in criminal charges, a night in jail, and the temporary loss of her children. The case proceeded in the district court and first was narrowed by motions to dismiss before the court eventually entered summary judgment in favor of the defendants on all remaining claims. Andersen appeals several of the district court's orders. Finding no error in any of them, we affirm.

# I

Barbara Andersen was married to Rick Gimbel, an emergency room physician, and they have two children. When the union came to an end in 2009, the couple entered into a joint custody agreement. The separation was not amicable and ignited hostilities that would continue for years, including accusations of harassment from both sides.

Tensions escalated in 2015 when a complaint that Gimbel submitted to the Glenview Police Department landed Andersen in jail. Gimbel reported that his former spouse had been harassing him, including by leaving angry voicemails. Detective Jacob Popkov was assigned to the case, and he was the one to make the arrest. Andersen spent the night in jail before being released on bond with the condition that she submit to a psychological evaluation. The court also ordered that the children remain with their father, though Andersen's custody was later restored.

A grand jury charged Andersen with three felonies—two counts of stalking and another of telephone harassment with the intent to kill. But she was never convicted. The state later chose to drop the stalking counts and reduce the harassment charge to a misdemeanor, of which she was acquitted after a bench trial. Andersen then brought a lawsuit of her own.

Andersen sued Gimbel, the Village of Glenview, and Detective Popkov. The factual allegations painted the disturbing picture of an ex-spouse who worked with a biased police officer to trump up charges against his children's mother that would put her behind bars so that he could whisk the kids away to a football game.

The complaint was based on many different legal theories related to Andersen's arrest and prosecution. She claimed that, among other things, Detective Popkov violated her First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights and committed the Illinois common law tort of malicious prosecution; Popkov and Gimbel conspired in the deprivation of her rights and in malicious prosecution; and all the defendants intentionally inflicted emotional distress upon her. Andersen also contended that Glenview was liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

The parties proceeded to vigorously litigate the case. Andersen unsuccessfully sought to disqualify attorneys from the Sotos Law Firm from serving as counsel to Glenview and Detective Popkov. The defendants moved to dismiss the complaint, resulting in all claims against Glenview being dismissed and a narrowing of the claims against Detective Popkov and Gimbel. In discovery, Andersen requested that Glenview be compelled to disclose emails between the Village and its counsel, but the district

court denied the request, finding the documents to be privileged. Andersen's case never made its way to a jury—the last remaining defendants received summary judgment in their favor. Andersen now appeals, raising issues from all these orders.

## II

### A

We begin with the motions to dismiss, of which our review is *de novo*. See *Hughes v. Sw. Airlines Co.*, 961 F.3d 986, 987–88 (7th Cir. 2020). In doing so, we accept the complaint's factual allegations as true and draw all reasonable inferences in Andersen's favor. See *id*.

Andersen contends that the district court was wrong to dismiss her claim that Detective Popkov falsely arrested her in violation of the Fourth Amendment. That claim required her to plead that he did not have probable cause for the arrest. See *Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016). The district court granted dismissal because it concluded that Andersen's allegations did not demonstrate a lack of probable cause. We agree.

For Detective Popkov to have had probable cause for the arrest, he must have known facts and circumstances that would be enough for a reasonable person to believe that she had committed an offense. See *id*. He justified the arrest as one for telephone harassment, defined under Illinois law as "[m]aking a telephone call, whether or not conversation ensues, with intent to abuse, threaten, or harass any person at the called number." 720 ILCS 5/26.5-2. Probable cause for that offense will bar the false arrest claim, even though Andersen was later charged with other crimes. See *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause.").

Andersen contends that the district court erred in considering the recordings of her voicemails and interrogation, which the Glenview defendants attached to their motion to dismiss. Ordinarily, district courts are confined to the pleadings on such a motion, but courts may consider outside exhibits that are central to the plaintiff's claim and referred to in the complaint, even if supplied by the defendants. See *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Those were the grounds that the court found to apply here, having concluded that the recordings were central to Andersen's claims and there was no dispute about their authenticity. But the court took care to point out that even without taking into account the content of the recordings, the complaint's allegations failed to show a lack of probable cause.

Andersen's complaint alleged that Gimbel filed a police report stating that he was being harassed through voicemail messages, submitted recordings of them (though the complaint does not specifically describe what they contained), and forwarded a log of his incoming calls. See *Woods v. City of Chi.*, 234 F.3d 979, 996 (7th Cir. 2000) ("[W]e have consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause."). It also alleged that Andersen called Gimbel's boss (which he reported to the police) and "several" other people in an angered attempt to stop what she perceived as Gimbel harassing her, which would have been reflected on the logs and recordings that Detective Popkov received. Taken altogether, these alleged facts positioned Popkov (or, more generally, any reasonable police officer) to believe that Andersen had engaged in telephone harassment. In short, Andersen's allegations could not support a claim that Detective Popkov lacked probable cause to arrest her.

The district court was right to dismiss the other claims that it did too. No allegations plausibly linked any statements by Detective Popkov to the bond court's decision to remove Andersen's children from her care. The state law malicious prosecution claim failed because "the chain of causation [was] broken by [the] indictment," and the complaint did not sufficiently allege any post-arrest actions by Detective Popkov that influenced the prosecutor's decision to indict. *Colbert v. City of Chi.*, 851 F.3d 649, 655 (7th Cir. 2017) (emphasis omitted). And our decision in *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013) holds that Andersen's intentional infliction of emotional distress claim against Detective Popkov began to accrue on the date she was arrested, rendering it time barred.

Nor could Andersen's *Monell* claim against the Village of Glenview survive a motion to dismiss. A municipality may be sued only for constitutional violations that it caused through one of its policies or by someone with final policymaking authority. See *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978). Andersen sought to hold Glenview responsible for obstructing her access to exculpatory evidence, an effort she alleges was accomplished by a Village attorney and outside counsel. The district court correctly concluded that these allegations do not plausibly establish that either party had final policymaking authority for Glenview or that anyone who did was involved. That defeats the claim.

B

We turn next to the district court's grant of summary judgment in favor of the defendants on the claims that survived the motions to dismiss. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We review the decision *de novo* and draw all justifiable inferences in Andersen's favor. See *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020).

First was Andersen's claim that Detective Popkov unconstitutionally prolonged her detention. When the delay between arrest and presentment to a judge is less than 48 hours, we presume it to be reasonable. See *County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991). Andersen was burdened with the task of rebutting that presumption because she was detained for just over 24 hours. See *Portis v. City of Chi.*, 613 F.3d 702, 703–04 (7th Cir. 2010). The district court concluded that Andersen had come up short on evidence that Detective Popkov unreasonably delayed her detention.

In challenging that determination, Andersen points to issues with Detective Popkov's credibility, including that he changed his justification for holding her overnight. But the Fourth Amendment's reasonableness analysis is objective. See *Whren v. United States*, 517 U.S. 806, 814 (1996); *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011). Properly placing credibility aside, we agree with the district court that Andersen's evidence did not rebut the presumption that her detention was reasonable. And with no underlying constitutional violation, there could be no conspiracy between Gimbel and Popkov to violate her Fourth Amendment rights. See *Green v. Howser*, 942 F.3d 772, 778 (7th Cir. 2019).

Last was Andersen's intentional infliction of emotional distress claim against Gimbel. The bar is high—the conduct must be "truly extreme and outrageous." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). The district court reasoned that although pursuing baseless criminal charges against someone could meet that demanding standard, Gimbel's allegations were not unfounded. Indeed, Illinois courts have previously found the act of filing criminal charges to fall below the required level of outrageousness. See, *e.g.*, *Schiller v. Mitchell*, 828 N.E.2d 323, 335 (Ill. App. Ct. 2005); *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 943 (Ill. App. Ct. 1997). We cannot say that the district court committed any error in concluding that no reasonable jury could find Gimbel's decision to lodge a report with the police after feeling threatened to be "intolerable in a civilized community." *Feltmeier*, 798 N.E.2d at 83.

C

Our final stop is Andersen's motion to disqualify attorneys from the Sotos Law Firm from serving as counsel to Glenview and Detective Popkov in this civil lawsuit because they had been involved in her criminal prosecution. The district court denied the motion, and we review that decision only for an abuse of discretion. See *United States v. Bender*, 539 F.3d 449, 454 (7th Cir. 2008).

Disqualification is a "drastic measure" that should not be imposed lightly. *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993). The district court rightfully found that the attorneys' acts in the criminal case—attending the bench trial, speaking with Glenview employees, and representing Glenview in a motion to quash subpoenas—had no relevance to the merits of the civil case. And by no means were the attorneys necessary witnesses. There was no need for disqualification.

### III

Andersen had many claims below and raises numerous arguments on appeal, and we have carefully considered them all. But after thoroughly reviewing the district court's orders, we are confident that there was no error. For that reason, we AFFIRM.